```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

RICHARD J. DELEAUMONT                        CIVIL ACTION

VERSUS

TRAVELERS CASUALTY INSURANCE                 NO. 06-8533
COMPANY OF AMERICA AND THE STANDARD
FIRE INSURANCE COMPANY                       SECTION B(4)
```

### ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Rec. Doc. No. 10).  After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

Defendant Standard Fire Insurance Company issued a homeowners' insurance policy to Plaintiff Deleaumont which was effective from June 24, 2004 to June 24, 2005.  On or about May 9, 2005, Defendant sent notice to Plaintiff giving Plaintiff the opportunity to renew the policy for another year from June 24, 2005 to June 24, 2006.  In order to renew, Plaintiff was given the option of paying (1) the entire balance of $2,318.00, (2) a minimum of $198.16, or (3) some

1

amount in between these two sums by June 24, 2005.  This notice also warned Plaintiff, "If you do not pay an installment on time, we may require payment of the total account balance to continue your coverage."

As of June 24, 2005, Defendant received no payment from Plaintiff.  On or about July 5, 2005, Defendant sent to Plaintiff an "Offer to Reinstate" which indicated that Plaintiff's coverage under the policy had expired as of June 24, 2005 because of non-payment but that Defendant would reinstate Plaintiff's policy if Defendant received "the 'TOTAL ACCOUNT BALANCE' [of $2,318.00] by 08/04/05."

On or about July 27, 2005 Defendant received and cashed a check from Plaintiff for $1,000.  Defendant received no additional payments by August 4, 2005.  Defendant alleges that on or about August 17, 2005, it refunded the $1000 to Plaintiff.  This refund is indicated on a document reflecting the billing activity for Plaintiff's policy.  This document also states that as of August 17, 2005, Plaintiff's policy was deemed cancelled effective retroactively as of June 24, 2005.  Plaintiff, however, alleges that he never received the $1,000 refund sent by Defendant nor did he receive any notice before Hurricane Katrina that his policy had been cancelled.

On August 29, 2005 Hurricane Katrina struck and allegedly

damaged Plaintiff's home. Defendant then denied coverage to the Plaintiff under the policy. Defendant alleged that the policy was not in effect at the time the Hurricane struck and had expired on June 24, 2005.

Defendant contends that Plaintiff had no coverage through it on August 29, 2005 when Hurricane Katrina struck and allegedly damaged Plaintiff's home. Defendant contends that Plaintiff's payment of $1,000 did not constitute a valid acceptance of Defendant's offer to renew the homeowner's policy. Thus, no contract was formed between Plaintiff and Defendant for the policy year commencing on June 24, 2005.

Plaintiff contends that Defendant should be equitably estopped from denying that coverage was in place at the time of Hurricane Katrina. Specifically, Defendant's custom of accepting overdue premiums reasonably lead Plaintiff to believe his policy would remain in effect even though he did not pay the premium when due.

Plaintiff also contends that by accepting Plaintiff's partial payment, Defendant waived its right after the Hurricane to claim that no policy was in place at the time of the Hurricane.

Finally, Plaintiff contends that if his conduct of sending the $1,000 payment is construed as a counteroffer, then the Defendant's conduct of cashing the check should be deemed an acceptance of that counteroffer leading Plaintiff to reasonably believe that coverage

remained in place.

## *DISCUSSION*

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F̲ED̲. R. C̲IV̲. P. 56(c))); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.   Offer and Acceptance**

4

Defendant argues that the insurance contract in dispute in this case is governed by the general contractual rules of offer and acceptance. Defendant contends that it offered to issue a contract of homeowners' insurance to Plaintiff if he paid $2,328.00. Plaintiff, however, rejected the terms of Defendant's offer by tendering only $1,000 by the final due date. Defendant characterizes this tender as a counteroffer. Defendant concludes that no contract existed because it rejected Plaintiff's counteroffer by returning the $1000 payment to him on August 17, 2005.

Louisiana Civil Code article 1943 defines a counteroffer as "an acceptance not in accordance with the terms of the offer." Here, the offer was that Plaintiff pay $2,328 by August 4, 2005. Plaintiff did not change the terms of the offer by sending the $1,000 check. The July 5, 2005 notice did not state that payment was due in one lump sum, only that the total was due by August 4. Thus, the facts establish that the $1,000 payment was not initially a counteroffer but a partial payment in keeping with Defendant's offer. Defendant then deposited the $1,000, thus accepting the partial payment of the premium.

Plaintiff does not dispute that once the time for accepting had run on August 4, 2005, Plaintiff had only paid $1,000 of the $2,328 due. By failing to pay the whole premium by the August 4 due

date, plaintiff did not properly accept Defendant's offer.  After the final due date passed and the whole amount was not received, Defendant then refunded the check as evidenced by the Billing Activity document.  Thus, there is no genuine issue of fact regarding Plaintiff's failure to properly accept Defendant's offer by the final August 4 due date.

Despite his failure to pay the premium by the due date, Plaintiff argues that under the doctrines of equitable estoppel and waiver, an insurance contract nevertheless existed between the parties.

**C.   Equitable Estoppel**

Plaintiff contends that a contract existed between him and the Defendant under the doctrine of equitable estoppel.  According to this doctrine, an insurance company is prohibited from denying coverage in the case of overdue payments if the company's custom of accepting overdue premium payments caused the insured to reasonably believe that the policy would remain in effect even though the premiums were not paid when due.  *See Carter v. Benevolent Life Ins. Co., Inc.*, 300 So. 2d 623, 625 (La. App. 3rd Cir. 1974). Louisiana jurisprudence allows recovery in cases involving late payment if (1) there is a habit or custom of accepting overdue premiums and (2) the insured reasonably believes that by reason of this custom, the insurer will maintain the policy in effect without

prompt payment of premiums.  *Carter*, 300 So. 2d at 625; *Winbush v. Polk*, 713 So. 2d 1262, 1265 (La. App. 1st Cir. 1998); *Maddox v. Keen*, 756 So. 2d 1279, 1283 (La. App. 2d Cir. 2000).

   In order to prove a custom of accepting overdue payments, Plaintiff has produced three past reinstatement notices dated August 23, 2002, August 7, 2003, and November 16, 2004.  These documents all evidence past instances in which Defendant reinstated Plaintiff's policy.  The 2002 and 2003 notices, however, do not provide any information regarding whether and when the late payments were received, nor do they reference the cancellation of the policy.  These notices state only that Plaintiff's policy was reinstated on these two occasions and provide the dates of the reinstatement.

   Along with the notice dated November 16, 2004, however, Plaintiff has submitted a second document which contains some additional information regarding the reinstatement.  This correspondence, dated November 4, 2004, states that as of that date, the premium payment had not yet been paid and that the policy would be cancelled if the premium was not paid by December 4, 2004.  The notice of reinstatement indicates that this premium was then paid by Plaintiff on November 11, 2004.  These two documents together establish that on this occasion, Plaintiff was given notice that the premium had not been paid and that the policy would

be cancelled if payment was not received.  Plaintiff then made the entire payment before the final cancellation date, and the policy was reinstated.

The timeline of billing activity at issue in the present case can be distinguished from these past instances involving reinstatement of Plaintiff's policy.  Specifically, in the present case, the final cancellation date of August 4, 2005 had passed, and Plaintiff still had not paid the full premium due.  In past cases, on the other hand, there is no evidence that Defendant ever accepted payment after the cancellation date.  The past notices indicate only that Defendant accepted payments after notice of cancellation but before the actual cancellation date.

The Court made a similar distinction between late payment before and after the actual cancellation date in *State Farm Mut. Auto. Ins. Co. v. Maryland Cas. Co*.  490 So. 2d 819 (La. App. 3rd Cir. 1986).  There, the insurance company routinely accepted late premium payments made before the cancellation date and reinstated the insured's policy.  *Id*. at 820.  The payment at issue in the case, however, was tendered by the insured two days after the effective date of cancellation.  *Id*.  The Court held that the doctrine of equitable estoppel did not apply because the insurance company's custom only existed with regard to overdue payments received before the effective date of cancellation.  *Id*. at 820-21. The plaintiff was not entitled to reasonably believe that his

policy would remain in effect if his payment was mailed and received *after* the effective date of cancellation. *Id*.

Similarly, in *Maddox v. Keen*, the insured was consistently late in paying premiums over a six month period in 1997. 756 So. 2d 1279, 1283 (La. App. 2d Cir. 2000). On October 18, 1997, the insurance company sent a notice of cancellation to the insured indicating that the payments were late and that the policy would be cancelled if the premium was not paid by November 7, 1997. *Id*. at 1283-84. In response, the insured paid the premium by October 31, 1997. *Id*. at 1284. Subsequently, the insured again failed to pay his premiums and was again sent a cancellation notice. *Id*. This time the insured did not pay by the cancellation date and the insurance company then sent a Cancellation/Renewal Notice dated December 18, 1997 which indicated that the policy would be cancelled if payment was not received by January 7, 1998. *Id*. The insured then failed to pay by January 7 and was subsequently involved in a car accident. *Id*. Relying on the past late payments, the insured argued that under the doctrine of equitable estoppel, coverage still existed at the time of the accident. *Id*. The Court, however, found that no coverage existed because the policy had been cancelled for non-payment and accordingly granted summary judgment in favor of the insurance company. *Id*. The Court acknowledged the prior late payments but found that the doctrine of equitable estoppel did not apply because there was no prior custom

or pattern by the insurance company of accepting premiums after the deadline listed in the second notice of cancellation. *Id*.

In the present case, as in *State Farm Mutual* and *Maddox*, there is no evidence in the prior reinstatement notices that Defendant accepted late payments after the cancellation date. At most, Plaintiff has shown that Defendant accepted late payments after notice that cancellation would occur if such payments were not received. These late payments, however, do not entitle the Plaintiff to a reasonable belief that his policy would remain in effect if he did not pay the entire premium before the effective date of cancellation.

In addition to the past reinstatement notices, Plaintiff has also submitted his own affidavit which states that he "on a regular and/or consistent basis provided late premium payments to defendant, insurance company" and that Defendant "customarily in their past practices accepted late premium payments from [Plaintiff] with [Plaintiff's] Homeowner's Insurance being customarily reinstated upon receipt of past premium payments." (Pl.'s Aff. ¶¶ 2-3). The affidavit, however, sets forth no specific instances in which Plaintiff tendered and Defendant accepted premium payments after the cancellation date. As the non-movant, Plaintiff must produce specific facts to demonstrate that a genuine issue exists for trial. *Lechuga v. S. Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992). Conclusory and unspecific

statements in a movant's own affidavit are inadequate to raise an issue of material fact. *Id*. These unspecific statements regarding late payment without reference to actual instances of payment after cancellation are insufficient to create a genuine issue of fact regarding a past custom of accepting past-due premiums.

Because the doctrine of equitable estoppel bars the normal assertion of rights otherwise present, it must be used cautiously. *Maddox*, 756 So. 2d at 1283. Equitable estoppel requires reliance on the part of the insured that is reasonable and justifiable under the circumstances. *Id.*; *Ledent v. Guar. Nat'l Ins. Co.*, 723 So. 2d 531, 537 (La. App. 2d Cir. 1998). In light of the lack of evidence of any custom of accepting past payment or any basis for a reasonable reliance on the part of the Plaintiff, the doctrine of equitable estoppel is not applicable to the present case.

**D. Waiver**

Plaintiff also contends that Defendant waived its right to claim that there was no insurance policy in place by cashing Plaintiff's check for $1,000. Waiver is an intentional relinquishment of a known right. *Maddox*, 756 So. 2d at 1284. Waiver occurs when there is an actual intent to relinquish a known right or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that the right has been relinquished. *Id*. Plaintiff, however, fails to produce any evidence to support the argument that Defendant's acceptance of

11

partial payment lead to a waiver of Defendant's right to the full payment.  Defendant accepted the $1,000 as partial payment of the entire premium, and when Plaintiff failed to pay the rest by the final due date, Defendant refunded that payment.  There is no evidence to suggest that by cashing the $1,000 check, Defendant relinquished its right to the rest of the balance before the due date as a prerequisite to providing coverage or its right to refuse coverage if Plaintiff failed to pay the remaining balance by August 4.  Thus, the doctrine of waiver does not apply in the present case.

In sum, there is no genuine issue of fact regarding Plaintiff's failure to tender the entire $2,328 premium by the final August 4 due date established by the Defendant.  Thus, no policy of insurance coverage existed between the parties. Furthermore, given the lack of evidence in the record of a past custom of the Defendant of accepting premium payments after cancellation of the policy or any intent on the part of the Defendant of relinquishing its right to deny coverage if Plaintiff did not tender the full premium, the doctrines of equitable estoppel and waiver do not apply in this case.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

New Orleans, Louisiana this 1st day of November, 2007.

                                             _____
                                             UNITED STATES DISTRICT JUDGE